[Crim. No. 921. Third Appellate District.—June 22, 1926.]

THE PEOPLE, Respondent, v. DON R. ROSNER, etc., Appellant.

[1] CRIMINAL LAW—ISSUING FICTITIOUS CHECK—INSANITY—DISCRETION —EVIDENCE.—In this prosecution for the offense of issuing a check without sufficient funds in the bank upon which the check was drawn to meet the same with intent to defraud, the trial court did not abuse its discretion in not submitting to the jury the question of the defendant's sanity.

[2] ID.—INSANITY—SECTION 1368, PENAL CODE—EVIDENCE—DISCRETION —APPEAL.—Under section 1368 of the Penal Code, the doubt as to the defendant's sanity must arise in the mind of the court before which the cause is being tried, and if, upon the facts and circumstances, the court has no doubt as to the defendant's sanity, the issue tendered should not be submitted to the jury simply because the attorney making the motion or the parties signing the affidavit are of the opinion or think that the defendant is

---

2. See 8 Cal. Jur. 196.

insane; and when the court has exercised its discretion, a clear case of abuse thereof must be made to appear before an appellate court will disturb the conclusion reached by the trial court.

(1) 16 C. J., p. 1284, n. 73; 18 C. J., p. 1136, n. 64, 65, p. 1137, n. 76.    (2) 16 C. J., p. 1284, n. 74, p. 1285, n. 77; 17 C. J., p. 228, n. 24.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Hart and H. W. Rich for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the offense of issuing a check without sufficient funds in the bank upon which the check was drawn to meet the same with intent to defraud, etc., and prosecutes this appeal from the judgment of conviction entered in said cause. The questions presented for consideration do not really affect anything other than certain proceedings taken and had between the time of conviction and the pronouncing of sentence thereon. The record shows that when the defendant was arraigned upon the information charging the offense above referred to, the defendant appeared in court without counsel, and apparently without means to obtain counsel, and the court thereupon appointed one William Carragher, an attorney at law, to represent the defendant in all subsequent proceedings. Upon arraignment, the defendant pleaded not guilty and the cause was duly set for trial. Upon the day set for trial the defendant appeared in court with his counsel and at that time the defendant objected to being represented by the counsel theretofore appointed by the court, stating in open court that he discharged him and that he did not want "to go to court with Mr. Carragher." The jury having been excused, the following proceedings and colloquy took place: "Mr. Carragher: If the Court please, there is in my mind a question as to the sanity of the defendant. Defendant: I object, your Honor; this man is crazy. The Court: You sit down. Defendant:

I am not trying to pull anything; he is accusing me of insanity, and I say he knows it isn't true, and he knows it isn't so. The Court: Don't try to put any of that stuff over here. Defendant: I am not trying to put any stuff over on you; you are trying to put something over on me. The Court: You think you are smart, trying to pull that stuff around here. You may have got out of other penitentiaries in pulling that kind of stuff, but you can't pull that kind of stuff around here. Defendant: I am not interested in that at all, your Honor. The Court: Proceed. Mr. Carragher: I am placed in a very embarrassing position. I talked with the defendant, he gave me an idea as to what his defense—he gave me a statement upon which I predicated his defense, and only yesterday, in talking with him, he just turns the reverse, and again this morning I talked with him and find him off both propositions. I have been given to understand that he has been examined—I don't know whether it was by a commission or not, but at least doctors have examined him, and if there is some question as to his sanity, it seems to me that he had ought to be examined. If he is sane, he should not be forced to go on with me, because his ideas of a defense and my ideas of his defense don't coincide, at all. I have been appointed to look out for his legal rights and propose to do so and will do so, to the best of my ability and—however, he should at least enjoy my confidence and I should enjoy his, and if your Honor is satisfied that he is sane and should go along, some other counsel ought to be brought in to represent him, someone whom he would respect and listen to and be counseled by. The Court: Well, I appreciate your position, Mr. Carragher, but your client will not follow your directions. I am perfectly satisfied that you will properly protect his rights and give him a good defense, but if he is one of those individuals that knows more than his lawyer, or thinks he does, I appreciate your embarrassing position, when he says that he doesn't wish you to defend him. You want to go to trial without an attorney? Defendant: I think that would be very unfair, your Honor, but, if necessary, I will do it. The Court: It is not unfair, at all. The Court appointed—Judge Pullen appointed Mr. Carragher to represent you. Defendant: And he advised me against my best thoughts. The Court: Very well, then; if you

know better than your attorney, and you want to go to trial without an attorney, why, the Court will release Mr. Carragher—if you know more about law and more about your defense than Mr. Carragher does. The Court doesn't think you do. Mr. Carragher will protect your legal rights, but if you are not satisfied with counsel the Court appoints,—you are a pauper and unable to employ counsel: beggars should not be choosers—but since you are dissatisfied with Mr. Carragher and do not desire him, if you desire, the Court will release him and you can proceed with your defense. Defendant: Will you give me an opportunity to get an attorney of my own and pay them? The Court: You had an opportunity to do that, and you haven't done it, and you said you couldn't do it, and the Court appointed counsel to represent you. And it was not this Court, either; it was Judge Pullen appointed Mr. Carragher to represent you, and he appointed able counsel to represent you. Now then, if you are not willing to follow his advice and feel you desire to dismiss him and to conduct your own defense— Defendant: He is fired. . . . The Court: Very well, then; Mr. Carragher, you are released from further service. The Court desires to protect the defendant, but if he does not want the service of counsel and is ready to proceed without counsel, why, the case has been regularly set down at this time and we will proceed with the trial. Defendant: All right; I ask for a continuance. The Court: The motion is denied. Mr. Carragher: I subpoenaed the witnesses on behalf of this defendant. The Court: Very well. Proceed with the examination of the jurors.''

The trial was then had with the defendant conducting his own case. On the day set for pronouncing judgment, the defendant appeared with counsel representing him upon this appeal and moved the court to submit to a jury the question of defendant's sanity, under the provisions of section 1368 of the Penal Code, which reads: ''If at any time during the pendency of an action up to and including the time when defendant is brought up for judgment on conviction a doubt arises as to the sanity of the defendant, the court must order the question of his sanity to be submitted to a jury; and the trial or the pronouncing of the judgment must be suspended until the question is determined by their verdict, etc.'' This motion was sup-

ported by two affidavits, one made by V. E. Parkinson, an attorney at law, stating that she was present during the trial of the action against the defendant and observed the demeanor of said defendant during a part of said trial; that during said time defendant conducted himself in a most jovial and boisterous manner and showed a total ignorance of the fact to be determined at said trial and acted as though the trial was not a real trial but a mock trial and occasion for merriment; that the defendant spoke of himself as a comedian and of the trial as a show; that by way of argument to the jury defendant sang a song that had no bearing upon the case and announced that he had a better mind and more intelligence than any person in the court; that affiant therefore is of the opinion that the defendant was insane.

The second affidavit was made by H. W. Rich, a practicing attorney, who set forth that at the request of Mrs. V. E. Parkinson he interviewed the defendant at the county jail in Sacramento, and from that interview concluded that the defendant was mentally unbalanced; that the defendant had no understanding of the seriousness of the offense with which he was charged or the gravity of his situation and was wholly incapable of consulting properly with counsel; that for the foregoing reasons affiant was of the opinion that at the time of the trial the defendant was incapable of defending himself either in person or by counsel, etc.

[1] It is urged upon this appeal that the court abused its discretion in not submitting to the jury the question of the defendant's sanity. With this in mind we have read the entire transcript, first for the purpose of determining whether there was not presented to the jury all that it could properly consider in determining the guilt or innocence of the defendant in relation to the offense for which he was being tried, and also for the purpose of reaching a conclusion as to whether the court had exercised that sound discretion with which it was charged in determining such matters, or whether the court had acted either capriciously or arbitrarily, as urged upon this appeal. The law is well settled that a trial court is not given an arbitrary discretion, but a discretion governed by certain fixed and well-established rules. These rules set forth that a court must exercise a legal discretion, which means a discretion founded

upon the facts and circumstances presented to the court, from which it must draw a conclusion governed by the law which requires that the defendant is entitled to an unbiased, unprejudiced, and considerate judgment of the tribunal determining the issues presented. It would serve no useful purpose and would lengthen this opinion beyond all reasonable limits were we to set forth the evidence contained in the transcript and the trial as it took place following the colloquy which we have set forth, and while the words used, which have been called to our attention with considerable earnestness, were not happily chosen, the entire trial thereafter shows a complete want of any really objectionable occurrences or anything whatever that would indicate that the defendant was not receiving a careful, conscientious, and proper determination, so far as the court and jury were concerned, of all the issues tendered concerning the guilt or innocence of the defendant and also of his alleged mental condition. That the defendant acted at times as though he did not fully appreciate his condition, or did not care what happened to him, or assumed an attitude of indifference and levity, does appear from the transcript. There is, however, impressed upon the reader the thought that the defendant to a considerable degree assumed an indifferent demeanor or attitude more for effect than from any mental aberration. So much for the trial.

[2] The court had abundant opportunity to study the defendant and come to a conclusion as to his mental condition. The two affidavits which we have set forth in substance contain really no facts upon which anyone might predicate a conclusion that the defendant was insane. Section 1368 of the Penal Code, of course, does not require that the facts presented to the court shall establish the insanity of the defendant before such issue should be submitted to a jury, but only requires that a doubt must arise as to the defendant's sanity. This doubt, of course, arises in the mind of the court before which the cause is being tried, and if, upon the facts and circumstances, the court has no doubt as to the defendant's sanity, the issue tendered should not be submitted to a jury simply because the attorney making the motion or the parties signing the affidavits are of the opinion or think that the defendant is insane. And when the court has exercised its discretion a

clear case of abuse thereof must be made to appear before an appellate court will disturb the conclusion reached by the trial court. The cold record presented to us does show that the defendant was wanting in his regard for the rights of others, that he had passed several checks and obtained some money in an easy manner, and also that the fact of being charged with a criminal offense made no very great impression upon his mentality, but we are not unmindful of the fact that there are several thousand persons, as shown by the criminal statistics of this state, who have exhibited the same traits, and respect neither the rights of persons nor property and are little abashed when charged with crime. All these matters are evidences of criminality but not necessarily of insanity, and the record in this case shows as well an indifferent and criminal nature as anything else, and the court having had an opportunity of studying the defendant personally could better determine the question as to whether the defendant was simply indifferent and criminal in his instincts or influenced by such mental defects as justify submitting the question of his sanity to the jury. The colloquy set forth in this case between the court, defendant, and counsel, while it might, in part, have properly been omitted, does not establish, as argued by counsel, that the court was prejudiced against the defendant, or did not, when the issue was finally presented, use that legal discretion incumbent upon a court in passing upon the defendant's motion.

The judgment of the trial court is affirmed.

Needham, J., *pro tem.*, and Finch, P. J., concurred.